CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 13 2012

JULIA A. DUDLEY, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VERNELL E. COLES, | ) |
| Plaintiff | ) Civil Action No. 7:11-cv-00555 |
| v. | ) |
| CARILION CLINIC | ) **MEMORANDUM OPINION** |
| and | ) |
| CARILION MEDICAL CENTER, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

This case involves claims by a black employee against his employers for racial harassment and discrimination under federal law and for intentional infliction of emotional distress under state law. The case is presently before the court on the defendants' motion to dismiss. For the reasons that follow, the court will grant in part and deny in part the motion to dismiss.

**I.     Factual and procedural background**

Vernell E. Coles (Coles or plaintiff), the black plaintiff in this case, resides in Roanoke, Virginia. (Docket No. 1 at ¶ 4.) The defendants, Carilion Clinic and Carilion Medical Center (collectively, Carilion or defendants), are corporations doing business in Virginia. (Id. at ¶¶ 5–6.) Coles began working for Carilion in April 1996 and is currently employed in Carilion's maintenance department. (Id. at ¶ 8.)

On November 7, 2009, Coles filed a Charge of Discrimination (charge) with the Equal Employment Opportunity Commission (EEOC), advancing allegations of race- and disability-based discrimination and disability-based retaliation. (Docket No. 10-1.) In his EEOC charge, Coles stated that he was assigned more menial tasks (such as "toilet" duties) than other nonblack

employees who shared the same job classification and that, since 2008, he had been denied light duty afforded to white employees with disabilities.[1] (Id. at 1.) Coles further alleged that he had been subjected to "verbal racial harassment, i.e., insinuations that [he was] a drug dealer, racist discussions regarding the current U. S. President, and usage of the term 'nigger.'" (Id.) According to Coles, he had made it known that such language offended him. (Id.) Coles also asserted that he had been denied a promotion within the maintenance department. (Id.) On February 14, 2009, Coles met with his supervisor, Ray Penny, to receive a performance evaluation. (Id.) During the meeting, Penny "falsely accused [Coles] of not doing [his] job and stated that [Coles] should seek disability benefits or a transfer." (Id.) The following day, Penny "verbally harassed [Coles] further about [his] medical restrictions and caused the [Employee Health] Department to send [him] to a doctor for evaluation of [his] impairment." (Id.) After Coles complained of disability discrimination, Penny escorted Coles into his office on March 5, 2009, and there proceeded to "falsely accuse[ Coles] of having accumulated eight (8) 'occurrences' and threatened to terminate [his] employment." (Id.) Coles concluded his charge by expressing his sentiment that he was being discriminated against and harassed due to his race and disability. (Id. at 2.) Furthermore, he opined that he was accused of accumulating excess "occurrences" in retaliation for complaining of disability discrimination. (Id.)

On November 23, 2011, more than two years after filing the EEOC charge, Coles initiated this civil action. In the complaint, Coles asserts that Carilion maintained a racially hostile work environment and harassed and treated him differently than his nonblack coworkers based on his race. (Docket No. 1 at ¶ 10.) More specifically, Coles alleges that he was frequently referred to by fellow employees as a "nigger" and a drug dealer, subjected to the display of shackles and a noose in the workplace, subjected to references to the Ku Klux Klan

---

[1] Although Coles made veiled references in his charge to a disability, he did not explicitly articulate the exact nature of his alleged disability.

2

and the lynching of a black man, subjected to similar racially derogatory remarks concerning the current President of the United States, denied promotions, and instructed to perform degrading work assignments. (Id. at ¶ 11.) Despite Carilion's policy providing that the company would promote from within its ranks before hiring outside workers, Coles alleges that one manager informed him that he would never advance because he was a "worthless nigger." (Id.) Another manager stated that Coles obtained his job only "because of the NAACP," that he was a "lazy nigger," and that the manager desired to terminate Coles but "could not figure out how to do it." (Id.) Coles further alleges that one worker claimed to be a member of the Ku Klux Klan and reportedly displayed a Klan belt buckle at work. (Id.) Based on these factual allegations, Coles advances two causes of action in his complaint: first, a claim for race discrimination and retaliation, pursuant to 42 U.S.C. § 1981 (§ 1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (Title VII); and, second, a claim for intentional infliction of emotional distress (IIED), pursuant to Virginia law.

On March 2, 2012, Carilion filed a motion to dismiss portions of the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 9.) More specifically, Carilion contends that, pursuant to Rule 12(b)(1), the court lacks subject matter jurisdiction over certain aspects of the plaintiff's Title VII racial discrimination and harassment claim, due to a failure to exhaust administrative remedies. Carilion further argues that, pursuant to Rule 12(b)(6), Coles has failed to state a claim upon which relief can be granted with respect to the state law IIED claim. Coles filed his brief in opposition to the motion on March 13, 2012. (Docket No. 11.) Carilion filed its reply brief on March 20, 2012. (Docket No. 12.)

The court heard argument on the motion on June 26, 2012. At the conclusion of the hearing, the court expressed its intention to deny the Rule 12(b)(1) motion with respect to the harassment portion of the Title VII claim and to grant the motion with respect to the retaliation

portion of the Title VII claim. Furthermore, the court granted the plaintiff fourteen days in which to amend his complaint with respect to the failure-to-promote portion of the Title VII claim and with respect to the IIED claim. The court granted Carilion ten days from that time in which to renew its motion to dismiss the amended portions of the complaint. The court stated that, after Carilion renewed its motion, the court would decide the motion on the pleadings.

The plaintiff filed an amended complaint on June 27, 2012, abandoning the retaliation claim, but pleading more detailed factual allegations related to the failure-to-promote and IIED claims. (Docket No. 21.) With respect to the plaintiff's failure to promote claim, he alleges in the amended complaint that he is currently employed by Carilion as a Maintenance Technician (Tech) I. (Id. at ¶ 12.) From 300 days prior to the filing of his EEOC charge up to the present time, Coles has performed the duties of a Tech II and Tech III and has also trained other employees in these duties. (Id.) Accordingly, he alleges, he sought a promotion to the positions of Tech II and Tech III and, in fact, was informed by Jamie Graham, his then-supervisor, that he would be promoted. (Id.) However, Coles alleges, Carilion later terminated Graham. (Id.) Moreover, instead of promoting him, the plaintiff alleges, Carilion has consistently hired or promoted less qualified white males to the positions of Tech II and Tech III. (Id.) For example, one of the defendant's managers told the plaintiff and others during an October 2011 department meeting that Carilion "could do anything they wanted to do" with respect to promotions. (Id.) During the meeting, the manager provided an organizational chart and stated that Carilion "had given Bill Battin a supervisor's job and hired Mickael Wright as a Team Lead . . . (both are white males)." (Id.) According to Coles, Carilion failed to afford him an opportunity to apply for these promotions. (Id.) Coles alleges that, "as of October 2011 (and at present) plaintiff was the only Tech I among the 31 employees on day shift, and no employees were working as Tech I's on second shift (three employees) or third shift (three employees)." (Id.) In other words, "all of

4

the 37 employees in the maintenance department—except plaintiff—were and are working as Tech II's or III's." (Id.) When Coles discussed the harassment and discrimination with Nancy Agee, Carilion's Chief Executive Officer, Agee allegedly offered Coles a monetary settlement and other insurance-related benefits. (Id.)

With respect to the IIED claim, the plaintiff alleges in the amended complaint that the abovementioned harassment and discrimination has caused him to suffer "severe emotional distress, high blood pressure, depression and related symptoms." (Id. at ¶ 13.) In fact, he alleges, he "dreads going to work." (Id.) In May 2012, he missed three days of work "due to his symptoms caused by the hostile work environment and was seen in the Carilion Clinic Employee Health department." (Id.) Furthermore, on May 15, 2012, a Carilion nurse "told plaintiff plainly . . . that he was working in a hostile work environment and that he needed to get out of there or he would suffer a heart attack or stroke." (Id.) Based on the factual allegations in the amended complaint, Coles advances two causes of action: first, a claim for race discrimination (premised on theories of harassment and nonpromotion), pursuant to § 1981 and Title VII; and, second, an IIED claim pursuant to Virginia law.

Carilion then filed a motion to dismiss the amended complaint. (Docket No. 23.) In addition to relying on the arguments previously presented, Carilion advances several new arguments in its subsequent motion to dismiss. Carilion contends that the plaintiff's Title VII failure-to-promote claim must be dismissed because, pursuant to Rule 12(b)(1), the court lacks subject matter jurisdiction over the claim, based on a failure to exhaust administrative remedies, and because, pursuant to Rule 12(b)(6), the plaintiff advances only vague allegations that fail to raise a right to relief above the speculative level. Furthermore, Carilion argues that, despite the inclusion of additional factual allegations in the amended complaint, the plaintiff has nonetheless still failed to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), with

respect to the IIED claim. Coles filed a brief in opposition to the motion to dismiss the amended complaint on July 10, 2012.

Having reviewed both the older and the more recent filings by the parties, the court will grant in part and deny in part the motion to dismiss.

## II. Discussion

### A. Lack of subject matter jurisdiction

As stated above, Carilion seeks dismissal of various aspects of the plaintiff's Title VII claim for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). Essentially, Carilion contends that Coles' failure to exhaust his administrative remedies divests the court of subject matter jurisdiction over these aspects of his Title VII claim.[2]

#### 1. Nonverbal harassment

Carilion argues that the plaintiff's failure to include in his EEOC charge the instances of "nonverbal harassment" (the display of shackles and a noose and the references to the Ku Klux Klan and a lynching) that appeared in the complaint strips this court of subject matter jurisdiction over this portion of the Title VII claim.[3]

Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a Charge of Discrimination with the EEOC. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). The allegations contained in the charge generally operate to limit the scope of any subsequent judicial complaint. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962–63 (4th Cir. 1996). More specifically, only those claims stated in the initial charge, those reasonably related to the original charge, and those developed by reasonable investigation of the original charge may be maintained in a subsequent

---

[2] Carilion does not seek dismissal of the plaintiff's claim brought pursuant to § 1981.
[3] The court notes that the allegations of verbal and nonverbal harassment that appeared in the complaint remain unchanged in the amended complaint.

6

Title VII lawsuit. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976); see also Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."). Hence, "a claim in federal district court litigation will generally be barred if the EEO and EEOC charge alleges discrimination on one basis and the formal litigation claim alleges discrimination on a separate basis." Bridgeforth v. Potter, Civil Action No. 3:10-CV-00030, 2011 WL 3102422, at *7 (W.D. Va. July 25, 2011) (citing Evans, 80 F.3d at 963). In other words, a plaintiff's failure to exhaust administrative remedies with respect to a Title VII claim deprives a federal court of subject matter jurisdiction over the claim.[4] Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Therefore, the issue becomes whether the abovementioned allegations in the complaint of "nonverbal harassment" were stated in the EEOC charge, were reasonably related to the assertions in the charge, or would be discovered by reasonable investigation of the assertions in the charge.

As stated above, Coles' EEOC charge, in pertinent part, contained the allegation that he "ha[d] been subjected to verbal racial harassment, i.e., insinuations that [he was] a drug dealer, racist discussions regarding the current U. S. President, and usage of the term 'nigger.'" (Docket No. 10-1 at 1.) However, Coles' subsequent civil complaint draws a broader stroke in terms of the allegedly harassing conduct that supports his Title VII claim. Specifically, Carilion identifies the allegations in the complaint of nonverbal harassing conduct—the display of shackles and a noose and the references to the Ku Klux Klan and the lynching of a black man. Clearly, these allegations of nonverbal conduct do not appear in the plaintiff's EEOC charge. Accordingly, this

---

[4] Requiring a Title VII plaintiff to exhaust administrative remedies before filing suit in federal district court serves two objectives. First, filing a charge with the EEOC notifies the employer of the alleged violations and affords the employer an opportunity to address the alleged discrimination prior to litigation. Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012). Second, the exhaustion requirement vests an administrative agency with the initial responsibility of resolving workplace discrimination claims. Id.

7

nonverbal conduct may serve as a basis for the plaintiff's Title VII claim only if the allegations are reasonably related to the original charge or would be discovered through reasonable investigation of the original charge.

The cases examining such an issue generally divide into two groups: (1) cases in which the administrative charge features one type of claim (race discrimination, for example) and the subsequent judicial complaint features another type of claim (gender discrimination, for example); and (2) cases in which the administrative charge presents a claim premised on certain facts (racial harassment based on allegations of name-calling by coworkers, for example) and the subsequent judicial complaint presents the same type of claim premised on different facts (racial harassment based on allegations of the display of pictures by supervisors, for example). The instant issue triggers the second line of cases—both the EEOC charge and the complaint allege a claim for racial harassment, but the specific facts underpinning that claim vary between the charge and the complaint. More specifically, the specific facts at issue here (the nonverbal harassment) did not appear in the charge, but instead, first surfaced in the subsequent complaint. The court believes that the majority of the cases cited by Coles and Carilion in their briefs prove largely irrelevant on this issue because these cases fall within the first group of cases referenced above—those involving a charge and a complaint featuring different types of claims. Instead, the court must survey case law emanating from the second group discussed above.

Within this second group of cases, however, arises another subdivision. Specifically, the United States Court of Appeals for the Fourth Circuit has recognized cases in which (1) both the EEOC charge and the complaint allege the same type of claim, but the central factual allegations supporting the claim differ as between the charge and the complaint; and (2) both the EEOC charge and the complaint allege the same type of claim, and the factual allegations supporting the claim, although different as between the charge and the complaint, are nonetheless sufficient to

afford adequate notice to the employer of the factual basis for the claim. A summary of two Fourth Circuit cases will illustrate this subtle distinction.

In Chacko v. Patuxent Institution, 429 F.3d 505 (4th Cir. 2005), the plaintiff's administrative charge and judicial complaint both contained claims for discrimination and hostile work environment based on national origin. These claims in the charge were supported by factual allegations involving isolated incidents of discriminatory and harassing conduct by supervisors. Id. at 507. However, the claims in the complaint (and those advanced at trial) were supported by factual allegations involving a continuing use of national-origin insults by coworkers. Id. at 508. After comparing the allegations in the charge to those in the complaint, the court determined that the administrative charge "dealt with different time frames, actors, and conduct than the central evidence at trial." Id. at 511. Judge Wilkinson, writing for a unanimous three-judge panel, explained that the plaintiff's factual "centerpiece" at trial differed so markedly from the allegations advanced in the EEOC charge that the court was compelled to conclude that the plaintiff failed to exhaust his administrative remedies. Id. at 510–11. In other words, the Fourth Circuit concluded that allegations regarding discrete instances of supervisory misconduct not involving name calling were not reasonably related to, and would not lead through reasonable investigation to, a continuous pattern of nonsupervisory misconduct involving name calling. Id. at 512.

In contrast, Sydnor v. Fairfax County, Virginia, 681 F.3d 591 (4th Cir. 2012), discusses the other subdivision referenced above. More specifically, the plaintiff's administrative documents and judicial complaint both contained a claim for discrimination on the basis of disability for failing to provide a reasonable accommodation. The recitations in the EEOC charge provided that the plaintiff requested light duty work as the sole accommodation. Id. at 592. However, the complaint was premised on the allegation that the plaintiff requested full duty

work with the assistance of a wheelchair as the sole accommodation. Id. at 593. Judge Wilkinson, again writing for a unanimous three-judge panel, explained that the variation in the proposed accommodations "does not mean that Sydnor failed to exhaust her administrative remedies." Id. at 595. Instead, the "touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same." Id. (citation omitted). In identifying the similarities between the charge and the complaint which satisfied the court that the claims were reasonably related, the court noted that both the charge and the complaint involved the same place of work and the same actor, both focused on the same type of discrimination, and both entailed the same disability. Id. These similarities, when considered in concert, sufficiently distinguished the case from Chacko and, according to the court, "ma[d]e clear that the County was afforded ample notice of the allegations against it." Id.

With this framework in place, the question becomes whether the instant case falls within the parameters of Chacko or Sydnor. The court believes that the instant case fits under the umbrella of Sydnor. Unlike in Chacko, Coles did not in the instant case completely renovate his central factual allegations as between the administrative charge and the complaint—the complaint's factual allegations do not introduce different actors or time frames from the allegations in the initial charge. Chacko, 429 F.3d at 511–12. In other words, the "centerpiece" of Coles' discrimination and harassment claims does not shift between his EEOC charge and his complaint. Id. at 510. Instead, the central factual allegation in the charge and in the complaint surrounds the plaintiff's belief that he had been subjected to racial harassment. Although the EEOC charge specifically utilizes the term "verbal" harassment, the so-called "nonverbal" harassment alleged in the complaint is reasonably related to the claim set forth in the administrative charge. Sydnor, 681 F.3d at 595. First, it is unclear from the complaint whether the allegation involving "references to the Ku Klux Klan and the lynching of a black man"

10

necessarily comprise nonverbal harassment. (Docket No. 1 at ¶ 11.) Rather, such "references" could reasonably contemplate verbal harassment and, as such, would likely be discovered through a reasonable investigation of the allegations in the EEOC charge. Sydnor, 681 F.3d at 596 (citing Smith, 202 F.3d at 247). Second, the allegation in the complaint concerning "the display of shackles and a noose in the workplace" would also likely be discovered through a reasonable investigation of the racial harassment allegations in the administrative charge. (Docket No. 1 at ¶ 11.) The plaintiff's counsel proffers that discovery will show that the display of these racist symbols in the workplace was accompanied by raucous laughter and racially offensive comments, thereby injecting a verbal component into this "nonverbal" harassment. Furthermore, counsel asserts that discovery will likewise reveal that Coles provided to the EEOC photographs of the noose and other racially offensive symbols and writings and, thus, that these items constitute part of the EEOC's investigation file.[5]

Thus, the instant case parallels Sydnor more closely than Chacko. In short, the "similarities between [Coles'] administrative and judicial narratives make clear that [Carilion]

---

[5] The plaintiff's forecast of what discovery will reveal with respect to the EEOC's investigation file is important for several reasons. First, the Fourth Circuit in Sydnor considered the plaintiff's EEOC questionnaire in assessing the allegations advanced at the administrative level. Sydnor, 681 F.3d at 594 & n.1. Because the questionnaire constitutes materials outside of the formal EEOC charge, the Fourth Circuit's decision to consider the questionnaire lends support to the proposition that materials in the EEOC's investigation file, albeit without the four corners of the formal charge, may nonetheless be consulted in determining the precise character of a plaintiff's allegations at the EEOC level, for purposes of an administrative exhaustion analysis. Carpenter v. Virginia Department of Transportation, Civil Action No. 5:06cv00035, 2006 WL 3314436 (W.D. Va. Nov. 14, 2006), does not cast doubt on the Fourth Circuit's opinion in Sydnor. In Carpenter, Judge Wilson confronted the question of "whether the court must look solely to the charge itself in determining whether Carpenter has met the exhaustion requirement or whether it may also consider the allegations made in Carpenter's questionnaire and the materials submitted with it." Id. at *5. Judge Wilson ultimately elected to consider the questionnaire and the associated documents in conducting the exhaustion analysis because he determined that the plaintiff's formal EEOC charge failed to capture the true nature of his questionnaire and the other supporting materials. Id. at *6. Hence, Carpenter could be read as suggesting that materials outside of the formal charge may be considered in an exhaustion analysis only when negligence by the EEOC resulted in an incomplete transfer of the allegations from the preliminary documents to the formal charge. However, any such suggestion by Carpenter is largely undercut by the Fourth Circuit's subsequent determination in Sydnor to consider the questionnaire in assessing the exhaustion issue absent any allegations of error on the part of the EEOC. Second, Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124 (4th Cir. 2002), also validates the court's decision to consider Coles' forecast of what discovery will reveal with respect to the EEOC investigation file in the instant case. In assessing whether an administrative investigation (based on the limited allegations in a formal charge) could reasonably be expected to uncover the broader claims in a complaint, the Fourth Circuit in Bryant expressly considered whether the EEOC's investigation, in fact, led to the discovery of any matters outside the scope of the charge. Id. at 133.

11

was afforded ample notice of the allegations against it." Sydnor, 681 F.3d at 595. Arriving at a contrary determination would serve only to undermine the goals of the exhaustion requirement. See id. at 597 ("[B]y dwelling on such technicalities, we would only undermine the congressional preference for agency resolution in this area. A quest for absolute precision in the administrative charge would only 'encourage individuals to avoid filing errors by retaining counsel,' thereby 'increasing both the cost and likelihood of litigation.'" (quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 406 (2008))); id. at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs. . . . 'Title VII . . . sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" (quoting Holowecki, 552 U.S. at 402)). Finally, the court's determination that Coles has satisfied the administrative exhaustion requirement with respect to the allegedly nonverbal harassment allegations is consistent with Fourth Circuit case law apart from Sydnor. See, e.g., Smith, 202 F.3d at 248 (determining that the exhaustion requirement was satisfied where the plaintiff's underlying claim of retaliation did not change as between the charge and the complaint, even though the form of the alleged retaliation varied between threatened termination and refusal to offer any other positions); Chisholm, 665 F.2d at 491 (finding exhaustion where both the charge and the complaint concerned discrimination in promotions, but involved different aspects of the promotional system).

For the reasons stated above, the court will deny Carilion's Rule 12(b)(1) motion insofar as it concerns the "nonverbal" harassment alleged in the plaintiff's Title VII claim.

### 2. Retaliation

As stated above, Carilion also moved to dismiss the retaliation claim in the complaint, contending that Coles failed to exhaust administrative remedies with respect to the race-based retaliation claim that appeared in the complaint because the EEOC charge contained only a claim

for disability-based retaliation. The court announced its intention during the motion hearing to grant Carilion's motion to dismiss with respect to the retaliation claim. Although Coles has since abandoned the retaliation claim in the amended complaint, the court will nonetheless explain briefly the basis for its announced intention to dismiss this claim.

Although Coles correctly states that Fourth Circuit case law excepts certain retaliation claims from the administrative exhaustion requirement described above, this exception applies only when a retaliation claim in a judicial complaint stems from the filing of an earlier EEOC charge. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) ("[H]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation. . . . [A] separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge."); Byers v. Napolitano, Civil No. 3:09CV25-V, 2010 WL 4818099, at *3 (W.D.N.C. Nov. 19, 2010) ("The court in Nealon held that a Title VII retaliation complaint need not be filed at the administrative level where the alleged retaliatory act occurs after the Plaintiff files a first EEO Complaint alleging Title VII discrimination." (emphasis in original)); Cumberlander v. KCL Site Servs., LLC, Civil Action No. 08-994, 2009 WL 4927144, at *3 (E.D. Va. Dec. 17, 2009) ("The Fourth Circuit's general rule, however, does not apply in cases where, as here, plaintiff could have alleged retaliation in his 2007 charge of discrimination to the EEOC, but failed to do so.").

In the instant case, the alleged acts of retaliation did not occur as a result of Coles filing the EEOC charge, but instead, occurred prior to the filing of the charge. For this reason, the facts in this case fail to trigger the Fourth Circuit's rule in Nealon. Coles was therefore required to exhaust his administrative remedies with respect to the race-based retaliation claim in the complaint. Because the text of the charge expressly limited the retaliation claim to the basis of

13

disability, Coles clearly failed to exhaust his administrative remedies with respect to the race-based retaliation claim in the complaint. See Lucas v. Henrico Cnty. Sch. Bd., 822 F. Supp. 2d 589, 601–02 (E.D. Va. 2011) (dismissing a claim in the complaint for gender-based retaliation when the EEOC charge contained a claim only for race-based retaliation); see also Chacko, 429 F.3d at 509 ("A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.").[6]

### 3. Failure to promote

At the motion hearing, Carilion urged the court to dismiss the plaintiff's Title VII nonpromotion claim for failure to file a timely EEOC charge, based on the absence in the complaint of any indication as to when the alleged nonpromotion occurred. As stated above, the court granted the plaintiff leave to amend the complaint to address this deficiency. In filing his amended complaint, Coles supplied additional factual allegations relating to the Title VII nonpromotion claim, including the allegation that the incidents of nonpromotion occurred within the 300-day period immediately preceding the filing of his EEOC charge. Although Coles has addressed the timeliness issue identified by Carilion in its initial motion to dismiss, the amended Title VII nonpromotion claim now poses different concerns, Carilion contends.

Carilion argues that Coles failed to identify in the EEOC charge and in the complaint the two specific instances of nonpromotion that now appear in the amended complaint. However, this argument lacks merit. Initially, it was for the very purpose of furnishing Coles with the opportunity to advance more detailed factual allegations regarding the nonpromotion claim that the court granted Coles leave to amend his complaint with respect to this claim. In any event, the

---

[6] In other words, the facts underlying this exhaustion issue regarding the retaliation claim demonstrate that this issue triggers the first cluster of cases referenced above—namely, cases in which the initial administrative charge features one type of claim and the subsequent complaint features another type of claim.

court believes that the specific allegations of nonpromotion presented in the amended complaint are reasonably related to the more generalized nonpromotion claim presented in the EEOC charge. Sydnor, 681 F.3d at 595. In other words, the specific instances of nonpromotion contained in the amended complaint would likely be discovered through a reasonable investigation of the more general allegations in the EEOC charge. Id. at 596 (citing Smith, 202 F.3d at 247). Hence, to the extent that Carilion seeks dismissal of the nonpromotion claim on the basis of a failure to exhaust administrative remedies, the court will deny the motion.

**B.     Failure to state a claim**

As stated above, Carilion argues pursuant to Rule 12(b)(6) that Coles has failed to state a claim upon which relief can be granted with respect to the nonpromotion claim and the IIED claim.

**1.     Failure to promote**

In addition to seeking dismissal of the plaintiff's nonpromotion claim on the basis of lack of subject matter jurisdiction, Carilion also seeks dismissal of the failure-to-promote claim pursuant to Rule 12(b)(6). Carilion contends that, apart from the two specific instances of nonpromotion discussed above, the remainder of the plaintiff's factual assertions related to the nonpromotion claim comprise vague allegations that are insufficient to survive a Rule 12(b)(6) motion.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). Thus, the proper inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

15

The court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Edwards, 178 F.3d at 244. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Assuming that the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

  The question therefore becomes whether Coles has pled sufficient facts so as to raise his right to relief above the speculative level with respect to the generalized allegations undergirding the nonpromotion claim. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (2006). To establish a prima facie case of a discriminatory failure to promote, a plaintiff must show that: "(1) []he is a member of a protected group, (2) there was a specific position for which []he applied, (3) []he was qualified for that position, and (4) [his employer] rejected h[is] application under circumstances that give rise to an inference of discrimination." Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004); see also Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 545 n.3 (4th Cir. 2003) ("In failure-to-promote cases such as this, 'the framework of proof for disparate treatment claims . . . is the same for actions brought under Title VII, or § 1981, or both statutes.'" (quoting Mallory v. Booth Refrigeration Supply Co., Inc., 882 F.2d 908, 910 (4th Cir. 1989))); Haywood v. Gutierrez, No. 1:08cv981, 2009 WL 1208111, at *5 n.2 (E.D. Va. Apr. 30, 2009) (stating that the

above-mentioned framework applies, "with little variation, to failure-to-promote claims whether based upon race, gender, or age").

After considering the plaintiff's allegations in the amended complaint and the relevant case law, the court believes that, in drawing all reasonable inferences in favor of the plaintiff, Coles has alleged sufficient facts which, if believed, would satisfy the four elements of his failure-to-promote claim and, accordingly, would entitle him to relief based on the generalized allegations identified by Carilion. First, Coles clearly has alleged facts demonstrating that he is a member of a protected class. Second, although Coles has not explicitly alleged that he applied for a specific position, he has alleged that he "sought to be promoted to th[e] positions" of Tech II and Tech III. (Docket No. 21 at ¶ 12.) In any event, the court notes that Coles alleges in the amended complaint that Carilion failed to afford him an opportunity to apply for at least some of the promotions that were later extended to white males. (Id.) See Williams, 370 F.3d at 431 ("On the other hand, if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position."); Van Slyke v. Northrop Grumman Corp., 115 F. Supp. 2d 587, 595 (D. Md. 2000) ("[A]lthough the plaintiff was unable to point to specific promotion positions in which she expressed an interest, the plaintiff, in order to satisfy the second prong of her prima facie case, was only required to show that had she known of a particular position, she would have applied." (emphasis in original)), aff'd, 17 F. App'x 154 (4th Cir. 2001) (per curiam). Third, although he has not expressly alleged that he was qualified for the positions of Tech II and Tech III, he has alleged that he "has performed the duties of a Tech II and Tech III and trained other employees to do the same" and that his former supervisor, Jamie Graham, informed the plaintiff that "he was going to promote [Coles]." (Docket No. 21 at ¶ 12.) Fourth, Coles clearly has set forth facts suggesting an inference of discrimination—he has alleged that "Carilion has

17

hired or promoted many white males as Tech II's or III's but failed to promote plaintiff." (Id.) See McCaskey v. Henry, 461 F. App'x 268, 270 (4th Cir. 2012) (per curiam) ("A showing that a member outside of the protected class received a promotion instead of the plaintiff is sufficient to create an inference of discrimination." (citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994))). Therefore, because Coles has advanced factual allegations in the amended complaint which, if believed, would satisfy the four required elements and entitle him to relief, the court will deny Carilion's Rule 12(b)(6) motion with respect to the nonpromotion claim.

### 2. Intentional infliction of emotional distress

Carilion also asserts that, pursuant to Rule 12(b)(6), the court must dismiss the plaintiff's state law IIED claim for failure to allege sufficient facts to establish the extreme conduct and harm required to sustain such a claim. Additionally, Carilion argues that Virginia's two-year statute of limitations bars Coles' IIED claim because, although the amended complaint (like the original complaint) fails to specify the dates of the allegedly extreme conduct, such conduct must have occurred prior to the filing of the November 7, 2009 EEOC charge. Because the complaint was not filed until November 23, 2011, more than two years thereafter, Carilion contends that the statute of limitations operates to bar this claim.

To state an IIED claim under Virginia law, a plaintiff must allege: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe. Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). As stated above, Carilion challenges the sufficiency of the alleged facts in the amended complaint insofar as they relate to the second and fourth elements of an IIED claim.

Pursuant to the second element of an IIED claim, a plaintiff must prove that the conduct giving rise to the claim was outrageous and intolerable. To satisfy this element, Coles relies on

18

the allegations in the amended complaint surrounding the use of racially abusive language and symbols and Carilion's persistence in refusing to promote him while electing to promote white males instead. An IIED claim under Virginia law "requires extreme or outrageous conduct intended to cause and in fact causing severe emotional distress. 'Extreme' means just that—only the most execrable conduct can give rise to the tort." Webb v. Baxter Healthcare Corp., 57 F.3d 1067, 1995 WL 352485, at *5 (4th Cir. 1995) (per curiam) (unpublished table decision). Furthermore, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Russo, 400 S.E.2d at 162. While the alleged conduct in the instant case "may violate contemporary standards of appropriate behavior in the workplace, [the court] cannot label it an atrocity or 'utterly intolerable in a civilized society.'" Webb, 1995 WL 352485, at *6 (emphasis in original) (concluding that the plaintiff's allegations that she was repeatedly ridiculed based on her gender, religion, and disability were insufficient to state a claim for IIED under Virginia law); see also Law v. Autozone Stores, Inc., No. 4:09CV00017, 2009 WL 4349165, at *3 (W.D. Va. Nov. 25, 2009) (stating that, generally, "verbal abuse and use of insensitive language will not meet the bill for outrageous and intolerable conduct for purposes of an IIED claim based on Virginia law"); Harris v. Kreutzer, 624 S.E.2d 24, 34 (Va. 2006) (stating that "[i]nsensitive and demeaning conduct does not equate to outrageous behavior as set by our caselaw"). For this reason, the court will grant Carilion's Rule 12(b)(6) motion with respect to the plaintiff's IIED claim.[7]

---

[7] The case on which the plaintiff relies, Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), is inapposite to the facts of the instant case with respect to the second element of the IIED claim. In Baird, the Fourth Circuit concluded that a school official's alleged conduct toward a young girl could satisfy the second element of an IIED claim based on the allegation that the school official "was abusing her position and because [the official] had reason to know that [the girl] was particularly susceptible." Id. at 472; see also id. ("[The plaintiff's complaint alleges, inter alia, that [the official]—in her capacity as [the girl]'s teacher and during a class to which [the girl] was assigned—intentionally attempted to humiliate [the] child, knowing that she was suffering from clinical

## III. Conclusion

For the reasons presented above, the court will grant in part and deny in part Carilion's Rule 12(b)(1) motion and will grant in part and deny in part Carilion's Rule 12(b)(6) motion.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 13th day of July, 2012.

_____
Chief United States District Judge

---

depression."). In contrast, there is no allegation in the instant case that Carilion officials abused their position and that they were aware that Coles harbored any atypical susceptibility to such abuse.

    Furthermore, the court notes another possible deficiency in the plaintiff's IIED claim with respect to the fourth element of such a claim. Pursuant to this element, a plaintiff must demonstrate that the distress resulting from the alleged conduct is severe. See Russo, 400 S.E.2d at 163 ("[L]iability arises only when the emotional distress is extreme, and only where the distress is so severe that no reasonable person could be expected to endure it . . . ."). Although Coles alleges that he has suffered "severe emotional distress," see Hatfill v. N.Y. Times Co., 416 F.3d 320, 337 (4th Cir. 2005) (concluding that generalized allegations of "severe emotional distress" and "grievous emotional distress" were sufficient to withstand a Rule 12(b)(6) motion with respect to the injury element of an IIED claim), Coles later concedes in his amended complaint that he remains employed with Carilion to this day. The fact that Coles has elected to continue working at Carilion belies his allegation of severe emotional distress. In any event, as stated above, the court need not rely on this potential insufficiency in the amended complaint based on the court's prior ruling that Coles has failed to satisfy the second element of his IIED claim.

    Further still, even if Coles had alleged sufficient facts to satisfy the necessary elements of his IIED claim, the court believes that the plaintiff's IIED claim is barred by the applicable statute of limitations. Pursuant to Virginia law, IIED claims are subject to a two-year statute of limitations. Va. Code Ann. § 8.01-243 (West 2012). Although Coles alleges that Carilion's conduct associated with its discriminatory refusal to promote him (set forth in paragraph 12 of the amended complaint) continues unabated to the present day, Coles fails to allege when the racially harassing behavior (set forth in paragraph 11 of the amended complaint) occurred. However, as Carilion observes, the harassing behavior that forms the basis of the plaintiff's IIED claim was alleged generally in his EEOC charge and, as such, must have occurred prior to the filing of the charge on November 7, 2009. Because the complaint was not filed until more than two years thereafter (on November 23, 2011), the statute of limitations likely operates to bar Coles' IIED claim.

    Finally, the court notes that Virginia courts frown upon IIED claims. See Russo, 400 S.E.2d at 162 ("Indeed, we have said recently that such torts are 'not favored' in the law." (quoting Ruth v. Fletcher, 377 S.E.2d 412, 415 (Va. 1989))).